UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CEDRIC ROBINSON,

    Plaintiff,

-vs-

LEXISNEXIS RISK DATA MANAGEMENT, LLC,

    Defendant.

CASE NO.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, CEDRIC ROBINSON (hereinafter "Plaintiff"), by and through his undersigned counsel, for his cause of action against Defendant, LEXISNEXIS RISK DATA MANAGEMENT, LLC (hereinafter "LexisNexis"), and in support thereof respectfully alleges violations of the Fair Background Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

### PRELIMINARY STATEMENT

1. This is an action alleging LexisNexis violated the Fair Background Reporting Act, 15 U.S.C. § 1681, *et seq.* (FCRA) by producing and selling background reports inaccurately reporting Plaintiff as "deceased", and thereby failing to follow policies and procedures to ensure the maximum possible accuracy of the background report it produced and sold.

1

2.  The FCRA creates a private right of action against a consumer reporting agency for the negligent, 15 U.S.C. § 1681o, or willful, 15 U.S.C. § 1681n, violation of any duty imposed by the FCRA. *Alexander v. Certegy Check Servs.*, No. 8:16-CV-859-17JSS, 2016 U.S. Dist. LEXIS 180072, at *5 (M.D. Fla. Dec. 29, 2016) (*citing Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015)).

3.  The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

4.  Plaintiff seeks entry of judgment, actual damages, statutory damages, punitive damages, costs, and attorneys' fees. 15 U.S.C. §§ 1681n and 1681o.

## **JURISDICTION, VENUE, AND PARTIES**

5.  Jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

6.  Venue is proper in this District as LexisNexis's principal address is in this District, LexisNexis transacts business within this District, and a substantial portion of the violations described in this Complaint occurred in this District.

7.  Plaintiff is a natural person and resident of Queens County in the State of New York. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

8. LexisNexis is a corporation with its principal place of business at 1000 Alderman Drive, Alpharetta, Georgia 30005.

9. LexisNexis is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). LexisNexis is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

10. LexisNexis disburses such consumer reports to third parties under contract for monetary compensation.

## FACTUAL ALLEGATIONS

11. LexisNexis is one of the largest background reporting agencies in the United States today.

12. In or about 2022, Plaintiff became aware that he was being reported as "deceased" by LexisNexis.

13. This is false. The plaintiff is very much alive. Plaintiff communicated with the Social Security Agency and investigated whether they were reporting him as deceased.

14. On or about December 8, 2022, Plaintiff received confirmation from the Social Security Administration verifying Plaintiff's identity and verifying he was not deceased.

15. In or about January 2023, Plaintiff received notice that his Bank of America account was closed as he was being reported as "deceased" by LexisNexis. Upon information and belief, it was Lexis Nexis that reported Plaintiff as deceased to Bank of America.

16. On or about September 7, 2023, Plaintiff obtained a copy of his LexisNexis consumer report. Upon review, Plaintiff observed that LexisNexis was inaccurately reporting several records with a date of death of "7/16/2012".

17. Due to this inaccurate reporting, Plaintiff has been denied several times for lines of background.

18. LexisNexis had good reason to know that Plaintiff was still alive, yet still reported him as deceased. For example, LexisNexis was aware of background applications on November 3, 2022, November 13, 2022, and December 24, 2022.

19. These inquiries were all during the time that LexisNexis was reporting Plaintiff as deceased. Yet, LexisNexis failed to correct its mistaken reporting.

20. Despite this, LexisNexis willingly chose to continue reporting that Plaintiff was "deceased" even though LexisNexis knew or had reason to know he was alive and well.

21. LexisNexis clearly does not have policies and procedures in place to ensure the maximum possible accuracy of the consumer reports it publishes in violation of the FCRA.

22. As a result of the actions and/or inactions of LexisNexis, Plaintiff was denied future background. Specifically, his Bank of America account was closed.

23. As a result of the action and/or inaction of LexisNexis, Plaintiff has suffered damages, including, but not limited to:

   i. Plaintiff suffered actual damages in wasted time attempting to resolve LexisNexis's error;

   ii. Denials for background;

   iii. Emotional distress including but not limited to anger, worry, frustration, embarrassment, fear, and sleeplessness. Plaintiff has been physically affected by LexisNexis's misreporting;

   iv. Apprehensiveness to apply for background due to the fear of rejection; and

   v. Defamation as LexisNexis published inaccurate information to third party entities.

## COUNT I
## Violation of 15 U.S.C. § 1681e(b) as to
## Defendant, LexisNexis Risk Data Management, LLC (Negligent)

24. Plaintiff re-alleges and re-incorporates paragraphs one (1) through twenty-three (23) as if fully stated herein.

25. LexisNexis violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure the maximum possible accuracy in the preparation of the background report and background files it published and maintains concerning the Plaintiff. Despite LexisNexis believing that Plaintiff was dead, it published his background report (containing the "customer deceased") to furnishers.

26. The FCRA requires that LexisNexis must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

27. The FCRA requires that LexisNexis must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b. LexisNexis, despite having access to the Social Security Death Index, refuses to cross-check individuals for accuracy of deceased reporting.

28. LexisNexis places a "deceased" notation or marking on reports when it is advised from any of their many data furnishing sources that a given consumer is deceased.

29. LexisNexis does not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

30. LexisNexis does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

31. Indeed, LexisNexis employs no procedures at all which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

32. Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, LexisNexis employs no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

33. Once a "deceased" mark is placed upon a consumer's report, LexisNexis will not calculate and will not provide a background score for that consumer. Moreover, LexisNexis knows that if it reports to a furnisher that a consumer is deceased, that such furnisher is likely to report it to the CRAs.

34. LexisNexis has received and documented thousands of disputes from consumers complaining that LexisNexis's Bankground reports have them erroneously marked as "deceased."

35. Nevertheless, LexisNexis employs no procedures which assure that a consumer marked as "deceased" on LexisNexis's reports is, in fact, deceased.

36. LexisNexis has no independent procedure to change an erroneous deceased status on its own and will merely parrot their furnishing source.

37. Nor does LexisNexis employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

38. For years after a consumer's actual death, LexisNexis will continue to sell for profit background reports about that consumer.

39. LexisNexis will only remove a deceased consumer's file from its backgroundreporting database when it is no longer valuable to LexisNexis – meaning that nobody is continuing to buy those reports.

40. LexisNexis charges third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

41. LexisNexis profits from the sale of reports on the deceased.

42. LexisNexis has in their background reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct background files for individual consumers that they have marked as "deceased."

43. LexisNexis knows that the background information and reports of truly deceased persons are used by criminals to commit identity theft or background fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to LexisNexis to be a common and major source of identity theft.

44. LexisNexis warns the relatives of truly deceased consumers that identity theft can be committed using the background reports and information of the deceased and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's background information or report.

45. LexisNexis has no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as deceased or for the buyers of their reports which access the purportedly deceased consumer's information.

46. Indeed, LexisNexis sells reports of the deceased to third parties in an automated fashion and without any specific or general certification that could

reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's background history and/or report.

47. For consumers who are deceased, there exists no permissible purpose under the FCRA for LexisNexis to ever sell their background reports, absent a court order.

48. LexisNexis knows that such reports contain a vast amount of personal identifying and background account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

49. At all times pertinent hereto, LexisNexis was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of LexisNexis.

50. At all times pertinent hereto, the conduct of LexisNexis, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of Plaintiff herein.

51. The conduct, action and/or inaction of LexisNexis was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 USC § 1681o.

52. Plaintiff is entitled to recover costs and attorney's fees from LexisNexis in an amount to be determined by the Court pursuant to 15 USC § 1681o.

WHEREFORE, Plaintiff, CEDRIC ROBINSON, respectfully requests that this Court award actual damages against Defendant, LEXISNEXIS RISK DATA MANAGEMENT, LLC, jointly and severally; award Plaintiff his attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; and grant all such additional relief as the Court deems appropriate.

## COUNT II
### Violation of 15 U.S.C. § 1681e(b) as to Defendant, LexisNexis Risk Data Management, LLC (Willful)

53. Plaintiff re-alleges and re-incorporates paragraphs one (1) through twenty-three (23) as if fully stated herein.

54. Plaintiff re-alleges and re-incorporates paragraphs one (1) through twenty-three (23) as if fully stated herein.

55. LexisNexis violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure the maximum possible accuracy in the preparation of the background report and background files it published and maintains concerning the Plaintiff. Despite LexisNexis believing that Plaintiff was dead, it published his background report (containing the "customer deceased") to furnishers.

56. The FCRA requires that LexisNexis must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

57. The FCRA requires that LexisNexis must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b.  LexisNexis, despite having access to the Social Security Death Index, refuses to cross-check individuals for accuracy of deceased reporting.

58. LexisNexis places a "deceased" notation or marking on reports when it is advised from any of their many data furnishing sources that a given consumer is deceased.

59. LexisNexis does not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

60. LexisNexis does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

61. Indeed, LexisNexis employs no procedures at all which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

62. Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, LexisNexis employs no procedures which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

63. Once a "deceased" mark is placed upon a consumer's report, LexisNexis will not calculate and will not provide a background score for that consumer.

64. LexisNexis has received and documented thousands of disputes from consumers complaining that LexisNexis's background reports have them erroneously marked as "deceased."

65. Nevertheless, LexisNexis employs no procedures which assure that a consumer marked as "deceased" on LexisNexis's reports is, in fact, deceased.

66. LexisNexis has no independent procedure to change an erroneous deceased status on its own and will merely parrot their furnishing source.

67. Nor does LexisNexis employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

68. For years after a consumer's actual death, LexisNexis will continue to sell for profit background reports about that consumer.

69. LexisNexis will only remove a deceased consumer's file from its background reporting database when it is no longer valuable to LexisNexis – meaning that nobody is continuing to buy those reports.

70. LexisNexis charges third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

71. LexisNexis profits from the sale of reports on the deceased.

72. LexisNexis has in their background reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct background files for individual consumers that they have marked as "deceased."

73. LexisNexis knows that the background information and reports of truly deceased persons are used by criminals to commit identity theft or background fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to LexisNexis to be a common and major source of identity theft.

74. LexisNexis warns the relatives of truly deceased consumers that identity theft can be committed using the background reports and information of the deceased and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's background information or report.

75. LexisNexis has no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as deceased or for the buyers of their reports which access the purportedly deceased consumer's information.

76. Indeed, LexisNexis sells reports of the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's background history and/or report.

77. For consumers who are deceased, there exists no permissible purpose under the FCRA for LexisNexis to ever sell their background reports, absent a court order.

78. LexisNexis knows that such reports contain a vast amount of personal identifying and background account information on the supposedly deceased

consumer, information that can be used to commit identity theft or for other fraudulent purposes.

79. At all times pertinent hereto, LexisNexis was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of LexisNexis.

80. At all times pertinent hereto, the conduct of LexisNexis, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of Plaintiff herein.

81. The conduct, action and/or inaction of LexisNexis was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n.

82. Plaintiff is entitled to recover costs and attorney's fees from LexisNexis in an amount to be determined by the Court pursuant to 15 USC § 1681n.

WHEREFORE, Plaintiff, CEDRIC ROBINSON, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, LEXISNEXIS RISK DATA MANAGEMENT, LLC, jointly and severally; award Plaintiff his attorneys' fees and costs; award pre-judgment and post-

judgment interest at the legal rate; and grant all such additional relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, CEDRIC ROBINSON, demands judgment for actual, statutory, compensatory, and punitive damages against Defendant, LEXISNEXIS RISK DATA MANAGEMENT, LLC, jointly and severally; attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

DATED this 5th day of December 2023.

Respectfully submitted,

**/s/ *Octavio Gomez***
Octavio "Tav" Gomez, Esq.
Florida Bar #: 0338620
Georgia Bar #: 617963
Pennsylvania Bar #: 325066
The Consumer Lawyers PLLC
412 E. Madison St. Ste 916
Tampa, Florida 33602
Cell: (813) 299-8537
Facsimile: (844) 951-3933

Primary Email:
Tav@theconsumerlawyers.com
Secondary Email:
Lisa@theconsumerlawyers.com
*Attorney for Plaintiff*